IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| J.R., a minor, by his parents and next friends ANALISA and JOE R.; <br><br> D.J., a minor, by his parents and next friends LAURIE and DAMON J.; <br><br> A.T., a minor, by her parents and next friends ANDREA and CLINT T.; <br><br> G.S., a minor, by her parents and next friends JARIN and SEAN S.; <br><br> A.S., a minor, by his parent and next friend MARIA N.; and <br><br> Disability Rights Texas, <br><br> *Plaintiffs*, <br><br> v. <br><br> AUSTIN INDEPENDENT SCHOOL DISTRICT, <br><br> *Defendant*. | §§§§§§§§§§§§§§§§§§§§§§§§§§§§§ <br><br><br><br> **CIVIL ACTION NO.: 1:21-cv-279** |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs J.R., a minor, by his parents and next friends Analisa and Joe R.; D.J., a minor, by his parents and next friends Laurie and Damon J.; A.T., a minor, by her parents and next friends Andrea and Clint T.; G.S., a minor, by her parents and next friends Jarin and Sean S.;

A.S., a minor, by his parent and next friend Maria N.; and Disability Rights Texas hereby complain of Austin Independent School District (Austin ISD) and allege the following:

## I. INTRODUCTION

1. Evaluations are the foundation of providing students with disabilities the free appropriate public education (FAPE) to which they are entitled under the Individuals with Disabilities Education Act (IDEA). 20 U.S.C.A. § 1400 *et seq*. Evaluations are used to identify children with disabilities, determine their eligibility for special education, and provide key information to the team that develops the educational plan, including determining services, for each student receiving special education.

2. Austin ISD is failing its students with disabilities because its evaluation system is broken. Hundreds of students are waiting for initial evaluations and hundreds more are waiting for reevaluations, all in violation of the timelines established by the IDEA and implementing state law.

3. As a result of the failures of Austin ISD, some students are not receiving any educational services, others are not receiving any special educational services, and others are receiving services that are based on out-of-date evaluations. None of these students are receiving the legally required FAPE.

4. Plaintiffs J.R., a four-year-old child with autism and expressive language disorder, by his parents, Analisa and Joe R.; D.J., a six-year-old child with a sensory processing disorder and Attention Deficit Hyperactivity Disorder (ADHD), by his parents Laurie and Damon J.; A.T., a five-year-old with suspected anxiety, obsessive-compulsive disorder, oppositional defiant disorder, and selective mutism, by her parents Andrea and Clint T.; G.S., a six-year-old child with a speech impairment and dyslexia, by her parents, Jarin and Sean S.; A.S., a ten-year-old with an

emotional disturbance, specific learning disability and autism, by his parent, Maria N.; and Disability Rights Texas file this civil action against Defendant Austin ISD alleging violations of the IDEA, 20 U.S.C. § 1400, *et seq.,* 20 U.S.C.A. § 1415(i)(2), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("504"). Plaintiffs seek declaratory and injunctive relief to challenge Austin ISD's failure to provide the named plaintiff children and at least 800 other students with timely initial special education evaluations and an estimated 1,600 students with timely three-year reevaluations in the past year.

## II.   PARTIES

5. J.R.'s parents and next friends bring this action on his behalf. Plaintiff J.R. is a four-year-old boy with autism and expressive language disorder. J.R. resides with his parents in Austin, Travis County, Texas, and is zoned to attend Casey Elementary School in Austin ISD.

6. D.J.'s parents and next friends bring this action on his behalf. Plaintiff D.J. is a six-year-old boy with a sensory processing disorder and ADHD. D.J. resides with his parents in Austin, Travis County, Texas and attends Cunningham Elementary in Austin ISD.

7. A.T.'s parents and next friends brings this action on her behalf. Plaintiff A.T. is five-year-old girl with suspected anxiety, obsessive-compulsive disorder, oppositional defiant disorder, and selective mutism. A.T. resides with her parents in Austin, Travis County, Texas and attends Davis Elementary in Austin ISD.

8. G.S.'s parents and next friends bring this action on her behalf. Plaintiff G.S. is a six-year-old girl with a speech impairment and dyslexia. G.S. resides with her parents in Austin, Travis County, Texas and attends Regina Matter, but is zoned to Oak Hill Elementary in Austin ISD.

9. A.S.'s parent and next friend brings this action on his behalf. Plaintiff A.S. is a ten-

year-old boy with an emotional disturbance, specific learning disability and autism. A.S. resides with his parent in Austin, Travis County, Texas and attends Allison Elementary in Austin ISD.

10. J.R., D.J., A.T., G.S. and A.S. are each a "child with a disability" within the meaning of the IDEA, 20 U.S.C. § 1401(3) and will qualify for special education services when fully assessed.

11. J.R., D.J., A.T., G.S. and A.S. are all people with disabilities as defined by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and are, therefore, entitled to the protections outlined in Section 504 of the Rehabilitation Act.

12. Plaintiff Disability Rights Texas ("DRTX") is an independent, private, non-profit agency, created by federal law and designated by the Governor of Texas as the federal protection and advocacy ("P&A") system for Texas. DRTX has the authority under federal law to pursue legal, administrative, and other appropriate remedies on behalf of Texans with disabilities to redress violations of their rights, including advocacy to implement changes in the policies, procedures, and practices of systems that impact persons with disabilities. Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15001 *et seq*. (PADD Act); the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act, 42 U.S.C. § 10801 *et seq*.; and the Protection and Advocacy of Individual Rights (PAIR) Program of the Rehabilitation Act, 29 U.S.C. § 794e (collectively referred to as the Acts). DRTX brings this action for declaratory and prospective injunctive relief to require Austin ISD to change its policies, procedures, and practices to ensure that all children with disabilities receive timely special education evaluations.

13. DRTX's governing board ("Board"), in accordance with 42 U.S.C. § 10805(c)(1)(B) and 42 U.S.C. § 15044(a) is composed of members who broadly represent, or are knowledgeable about, the needs of the clients with disabilities served by the P&A system. See

also 42 C.F.R. § 51.22(b)(2). DRTX's Board includes two (2) individuals who are persons with disabilities and twelve (12) individuals who are family members of persons with disabilities. The DRTX Board is responsible for planning, designing, and implementing activities necessary to carry out DRTX's federal mandate. 42 U.S.C. § 10805(c)(2)(A) & (B). Additionally, DRTX has an Advisory Council; eighty percent of the Advisory Council's members either have a mental illness or are family members of persons with a mental illness. DRTX's Board and Advisory Council establish DRTX's priorities for representation, and oversee and influence the activities that DRTX undertakes in order to meet the requirements of its federal authorizing legislation. 42 U.S.C. § 10805(a)(6)(A) & (B).

14. DRTX also provides an opportunity for persons with disabilities to comment on its priorities and activities, and has a grievance procedure for clients to assure that individuals with mental illness and developmental disabilities have full access to the services of the system. 42 U.S.C. § 10805(a)(8) and (9); 42 U.S.C. § 15043(a)(2)(E). As such, DRTX represents persons with disabilities and provides them the means by which they can protect their collective interests.

15. Further, DRTX has expended and continues to expend resources advocating on behalf of children with disabilities who need special education services but have not been provided timely evaluation, by representing individual clients with advocacy in schools and by filing complaints with the Texas Education Agency (TEA). Through this work, DRTX has represented at least ten students and their parents who were denied timely special education evaluations in Austin ISD. Each of these clients and individuals, including the Plaintiffs, is a member of DRTX and has suffered, or is continuing to suffer, an injury that would allow him or her to bring suit in his or her own right.

16. The interests DRTX seeks to protect are germane to its purpose of advocating for and protecting the legal rights of all Texans with disabilities. Neither the claims asserted nor the

declaratory and injunctive relief requested requires the participation of the individual members in this suit. The benefits of the relief sought will necessarily inure to DRTX's members who need timely special education evaluation and compensatory services.

17. Defendant Austin ISD is a political subdivision of the State of Texas and a duly incorporated school district located in Austin, Texas. The school district is a recipient of federal funds under the IDEA, is an "educational service agency" within the meaning of the IDEA, 20 U.S.C. § 1401(4), and thus must comply with the Act and its regulations. The school district is served with this Complaint through Dr. Stephanie S. Elizade, Superintendent, 4000 S. IH 35 Frontage Road, Austin, Texas 78704.

18. Austin ISD receives federal funds, and it is therefore subject to the provisions of Section 504 of the Rehabilitation Act, 29 U.S.C. §794.

### III. JURISDICTION AND VENUE

19. This Court has jurisdiction over the federal claims in this action pursuant to 20 U.S.C. § 1415(i)(2)-(3) and 28 U.S.C. § 1331. Under 28 U.S.C. § 1391(a)(3) and (b)(3), venue in this action is proper in this district because Defendant Austin ISD may be found in this district, is subject to personal jurisdiction within this district, and there is no other district where the action may be brought.

### IV. NATURE OF THE ACTION

20. The Individuals with Disabilities Education Act (IDEA) provides that school districts have an affirmative Child Find duty to identify, locate, and evaluate "[a]ll children with disabilities…who are in need of special education and related services." 20 U.S.C.A. § 1412(a)(3)(A). The initial evaluation must be conducted within 60 days of receiving parental consent for the evaluation. 20 U.S.C. § 1414 (a)(1)(C)(I); 34 C.F.R. § 300.301(1)(i). Texas state law

requires that a district respond to a parent's written request for an initial special education evaluation within 15 school days, by providing (1) consent for evaluation, or (2) a prior written notice explaining why district is not agreeing to evaluate. 19 TEX. ADMIN. CODE § 89.1011(b). Once consent is provided, the initial special education evaluations to be completed within 45 school days. 19 TEX. ADMIN. CODE § 89.1011(c). After children are in special education, federal regulations require reevaluation at least every three years unless a parent and the school district agree that it is unnecessary. 34 C.F.R. § 300.303(b). These procedural rights are essential to the provision of the substantive benefit afforded by the IDEA, which is a free appropriate public education (FAPE).

21. School psychologists, also known as Licensed Specialists in School Psychology (LSSPs), are essential special education personnel who lead evaluations and provide other interventions for students with disabilities. They are also trained to conduct threat assessments, provide crisis intervention and response, and implement positive behavior intervention and supports.

22. Austin ISD's ability to conduct timely evaluations has collapsed because of numerous structural deficiencies in the district, including a severe shortage of LSSPs. Austin ISD special educators and parents began raising the red flag on this issue in 2019. The District, however, allowed the situation to get worse. Now, an estimated 800 students are believed to be waiting for initial assessments that are passed their due date, leaving them with no special education services. Twice as many students are believed to be past due on their three-year reevaluations, meaning that their programing is based on out-of-date assessments and their current needs are not being met. As a result, none of these students are receiving the legally required FAPE.

### V.   FACTUAL ALLEGATIONS

**A.   Austin ISD's Long and Worsening History of School Psychologists Shortages and Evaluation Delays Began Before the Pandemic**

23. Austin ISD has a long history of understaffing essential school psychologist

positions to serve students in special education. An outside review of the district's special education programs was conducted in 2010. This review found that "[t]here appear to be more AISD students with disabilities per speech/language therapists and psychologists, compared with most other urban districts." *Improving Special Education Services in Austin ISD,* Great City Schools (2010).

24. The issue was highlighted again more recently, beginning in 2019. During public comment at the Austin ISD school board meeting on November 18, 2019, Austin ISD school psychologist Cassandra Hulsey raised concerns about the inadequate staffing of school psychologists in the district. She pointed to national best practices of employing one school psychologist for every 500-700 students and compared that to Austin ISD's positions which, *if every position was filled*, only provided one psychologist for every 1,400 students.

25. The positions, however, were far from filled. For the 2019-2020 school year, the District identified 49 campuses without an assigned LSSP, marking these positions as "vacant."

26. On February 24, 2020, Special Education Teacher Sarah Kent offered public comment to the AISD board that school psychologist vacancies were causing numerous delayed evaluations on many campuses, including eight on her campus alone. She expressed concern that students were going months without needed services, and that the district special education department had shared no plan with teachers to get evaluations done and to provide compensatory services. She referred to the district's "dereliction of duty."

**B. Austin ISD Fails to Follow State Guidance on Evaluations During COVID-19 Pandemic, Increasing its Evaluation Backlog**

27. During the COVID-19 pandemic, the Texas Education Agency (TEA) provided detailed guidance encouraging districts to "make a good faith effort to complete relevant components of the evaluations, to the extent practicable, given limitations on face-to-face

evaluation."

https://tea.texas.gov/sites/default/files/covid/covid19_evaluation_guidance_april_2.pdf.   TEA also made clear that timelines for special education evaluations were not waived, and continued to apply. As noted by TEA, school days include days where educational services or instructional supports were provided to any student. Tex Educ. Code § 29.004. This includes virtual instruction provided during periods when campuses were closed for in-person learning.

28. TEA even included helpful charts showing components of evaluation that could likely still be completed during virtual learning.

29. Despite TEA guidance, Austin ISD instructed their limited evaluators who were already backlogged with overdue evaluations to cease <u>all</u> testing when schools were moved to virtual learning in April 2020. A district special education supervisor told DRTX in July 2020 that no special education evaluations would take place during closures and when social distancing guidelines were in place. In the fall, Austin ISD began the school year with virtual-only instruction and continued to state that evaluations would not start back until classes resumed in person.

30. On October 2, 2020, DRTX filed a State Special Education Complaint against Austin ISD on behalf of two students with delayed special education evaluations. Austin acknowledged the delays but blamed the delays on the pandemic. In reviewing the communication Austin ISD sent TEA, DRTX learned that at least 627 additional students were awaiting initial special education assessment. The TEA failed to address those students in the investigation report.

**C. The Media Exposes Rapidly Escalating Evaluation Delays and a Special Education Department in Complete Disarray**

31. On February 26, 2021, an investigative journalist found that "[a]pproximately 500 initial evaluations and a 'similar number' of reevaluations are currently overdue, and the numbers of staff who would typically be able to fill them are dwindling, leading to a heavy reliance on

contracted employees." Clara Ence Morse, *AISD's Special Education System Struggles to Keep Up*, Austin Chron., Feb. 26, 2021, https://www.austinchronicle.com/news/2021-02-26/aisds-special-education-system-struggles-to-keep-up/. With data obtained through open records requests, the reporter found Austin ISD has lost nearly half of its evaluation staff since October 2019. *Id*. In March 2019, the district employed 51 school psychologists, but, since then, 48 had resigned. *Id*. Even with new hires, the district currently employs only 19 school psychologists, "putting its student-to-psychologist ratio at 3,959:1 – nearly six times the upper limit recommended by the National Association of School Psychologists." *Id*. Dr. Akweta Hickman, Austin ISD's executive director of special education, announced the week of the story that she would leave the district. *Id.*

32.     In the article, the former supervisor of evaluations for Austin ISD, Karen Owens, described how the district started falling behind and why the staff, including herself, decided to leave before the COVID pandemic even began. She said it became much more difficult to get approval for contract extensions to complete evaluations over the summer, a common way for evaluators to get ahead of the back-to-school deadline crunch while being paid for their additional time. In addition, Owens described working 12-hour days frequently, including weekends. *Id*.

33.     Just a few weeks later, a subsequent media story found that the number of out-of-date initial evaluations had reached 800. Claire McInerny, *Panic Mode: Austin ISD Needs To Evaluate 800 Students For Special Ed., It Doesn't Have The Staff To Do It*, KUT 90.5 AUSTIN'S NPR STATION. March, 11, 2021, https://www.kut.org/education/2021-03-11/panic-mode-austin-isd-needs-to-evaluate-800-students-for-special-ed-it-doesnt-have-the-staff-to-do-it. In that story, former Austin ISD school psychologist Alana Riddle described being assigned two campuses to manage three years ago but trying to keep up with six campuses at the time of her resignation in December 2020. *Id.*  She also explained that school psychologists were being told

not to prioritize revaluations, which are required every three years. *Id.*

### D. J.R.'s Delay in Assessment for Early Childhood Special Education Denies Him of All Educational Services During Crucial Preschool Year

34. J.R. is a four-year-old boy with autism and expressive language disorder who is zoned to Casey Elementary in Austin ISD. Because of Austin ISD's delays to evaluate J.R. for special education, he has been denied all access to public school and to all special educational services for months.

35. At the recommendation of J.R.'s pediatrician, his parents emailed Austin ISD's special education department to request a special education evaluation on October 26, 2020. On November 10, 2020, his parents signed an evaluation consent for Austin ISD to conduct a Full and Individual Initial Evaluation (FIIE).

36. On December 28, 2020, J.R.'s physician wrote a follow-up letter directed to Austin ISD stating that J.R. has been diagnosed with autism and associated developmental delays and that he needs to be enrolled in an in-person pre-kindergarten program as soon as possible.

37. J.R.'s parents followed up with Austin ISD after months of waiting for evaluations to begin. Austin ISD rarely responded to his parents' inquiries, but when they did, they reminded his parents that J.R. was on several evaluation waitlists along with other children with disabilities who have already been waiting for over a year to be evaluated. In the correspondence to his parents, Austin ISD blamed the delay of evaluations on COVID-19, an understaffed department, months of backlogged evaluations, and the fact that they must work around parent schedules.

38. On March 4, 2021, J.R.'s parents requested an Admission, Review and Dismissal (ARD) meeting in order to determine eligibility for special education services using outside evaluations which had already been completed, while Austin ISD completed the FIIE. This would have allowed J.R. to enroll in school and begin receiving services. On March 26, 2021, Katy

Escandell, the Assistant Director for 504 and Special Education, confirmed in email that the outside assessments provided by the parents were "thorough documents" but concluded that they cannot replace the district's own assessment for eligibility determination.

39. Because four-year-old students like J.R. are only entitled to attend school if they are special education-eligible, the delay in his assessment has denied him all educational services.

### E. D.J.'s Delay in Assessment for Early Childhood Special Education Denies Him of All Special Educational Services

40. D.J. is a six-year-old boy with a sensory processing disorder and ADHD who attends Cunningham Elementary in Austin ISD. Because of Austin ISD's delays to evaluate D.J. for special education, he is being denied access to all special educational services.

41. Prior to beginning school, D.J. had been receiving occupational therapy from a private provider because of his suspected disability. On September 9, 2020, shortly after D.J. began kindergarten, his parents verbally requested a special education evaluation during a telephone call with an Austin ISD staff member. His parents transmitted their special education evaluation request in writing through an email sent to school staff that same day. In response to the email, an Austin ISD staff member advised that the evaluation consent needed to be signed at an ARD meeting. The ARD meeting was never scheduled.

42. Texas law requires Austin ISD to either provide the parent requesting special education evaluations with either an evaluation consent form or, if the school is refusing conduct the requested evaluation, a prior written notice form explaining the reason for the refusal within 15 days of the request. Despite this requirement, D.J.'s parents were only provided with an evaluation consent forms more than four months later, on January 15, 2021, via email. D.J.'s parents should have been provided with an evaluation consent form on September 24, 2020 and his evaluations should have been completed by December 4, 2020.

43. D.J.'s evaluations were started on March 2, 2021, but have not been completed. D.J. is still not receiving any supports or services to address his disability. Because of Austin ISD's failure to follow legally required timelines, D.J. has missed out on critical support, and it has affected his ability to benefit from his education.

**F. A.T.'s Delay in Assessment for Early Childhood Special Education Denies Her of All Special Educational Services**

44. A.T. is a five-year-old girl with suspected anxiety, obsessive-compulsive disorder, oppositional defiant disorder, and selective mutism who attends Davis Elementary in Austin ISD.

45. A.T.'s behaviors and their effect on her ability to learn led her parents to request special education evaluations in early March 2020. An evaluation consent signing meeting was scheduled for March 25, 2020 but was rescheduled because of the sudden school closures due to COVID-19. Evaluation consents were signed on April 23, 2020.

46. A.T.'s evaluations should have been completed on June 22, 2020. As of today, evaluations have not been initiated and A.T. has gone the entire 2020-2021 school year without any special education supports or services. She has missed out on a year of assistance to which she is legally entitled; a year of lack of assistance coupled with a year of virtual learning has set A.T. her back socially and psychological.

**G. G.S.'s Delay in Assessment for Special Education Denies Her of All Special Educational Services**

47. G.S. is a six-year-old girl with suspected speech disorder and dyslexia who attends Regina Matter. Her district of residence is Austin ISD and is zoned to Oak Hill Elementary School. The IDEA requires that local education agencies locate, identify, and evaluate <u>all</u> children with disabilities, including those who are enrolled in private schools located in the school district served by the local education agency or students who live within the district. [34 CFR 300.131(a)] [20 U.S.C. 1412(a)(10)(A)(i)(II)]. Austin ISD has a portion of federal funds to serve children enrolled

in private schools and residing in Austin ISD boundaries.

48. G.S.'s disability has greatly affected her ability to read and solve math problems. G.S.'s academic struggle led her parents to request special education evaluations from Austin ISD on November 11, 2020 via email. A consent for a Full and Individual Initial Evaluation was signed on December 17, 2020 via a Zoom meeting.

49. On March 9, 2021, almost a month after the evaluations should have been completed, G.S.'s parents received an email stating that they did not know when G.S.'s evaluations would be completed due to Austin ISD's evaluation team being "severely short-staffed."

**H. A.S.'s Delay in Assessment for a Special Education Re-Evaluation Denies Him of Appropriate Special Educational Services**

50. A.S. is a ten-year old boy with an emotional disturbance, specific learning disability and suspected autism who attends Allison Elementary in Austin ISD. A.S. is currently receiving inappropriate special education services because his evaluations are outdated and do not recognize autism as his primary disability. Because A.S.'s evaluations are no longer useful in determining the supports and services to which he is entitled, he has made no progress and is not benefiting from his education.

51. A.S.'s regression has been caused by Austin ISD's failure to timely re-evaluate him in order to address his disability. A.S.'s most recent full individual evaluation was conducted on November 30, 2017. A.S. is enrolled 4th grade but reads at a 1st grade level and he cannot write.

52. On November 5, 2020, an ARD meeting was held to conduct a review of existing evaluation data (REED) and to obtain consent for a full reevaluation for A.S. The REED revealed that additional information was needed in the areas of language and communication, health/motor

abilities, sociological, emotional/behavior, intelligence/adaptive behavior, and academics. At the conclusion of the ARD meeting, A.S.'s parent signed an evaluation consent for a Full and Individual Evaluation (re-evaluation) and a Functional Behavioral Assessment. The FIE and FBA should have been completed on January 19, 2021 but have not been completed to date.

## VI.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

53. To ensure that all children with disabilities receive FAPE, parents are granted the rights to participate in the educational planning for their children and to pursue administrative remedies should the local education agency ("LEA") fail to provide the required educational evaluations, services and supports to ensure that children receive a FAPE. 20 U.S.C. § 1415. While this individualized system works well in most cases that require fact-intensive findings about children's individualized needs, there remain other instances that are not susceptible to case-by-case resolution.

54. In this case, over eight hundred children are currently impacted by the same failure of Austin ISD to conduct timely assessments. Similarly, hundreds of students are currently impacted by the failure of Austin ISD to conduct timely re-assessments. Each of these needs the same systemic changes to Austin ISD policies regarding assessments and re-assessments. There is no practical or efficient way for each of the impacted children to utilize the administrative process. Additionally, exhausting remedies for any one or several students would be futile, because the district would expedite evaluation and award compensatory services to that one child (as they have with previous individual DRTX clients) without remedying the systemic concerns that are impacting the other students. This problem is exacerbated because of the inequity to accessing legal resources and the very real limitation of the number of individual clients that public interest

providers like DRTX can serve. Because exhaustion would be futile, exhaustion should not be required.

## VII.   CAUSES OF ACTION

**FIRST CAUSE OF ACTION: INDIVIDUALS WITH DISABILITIES EDUCATION ACT**

Plaintiffs incorporates paragraphs 1 through 54 of this Complaint as if fully incorporated herein. Austin ISD, by its actions and inactions set forth above, violates the Individuals with Disabilities Education Act, the Texas Education Code, and the rules promulgated by the Texas Commissioner of Education and the State Board of Education by:

(a) failing to develop policies and procedures to identify, locate, and evaluate students for special education and related services, as required under the IDEA. 34 C.F.R § 300.111.

(b) failing to provide timely initial evaluations for special education, as required by 20 U.S.C. § 1414 (a)(1)(C)(I), 34 C.F.R. § 300.301(1)(i) and 9 TEX. ADMIN. CODE § 89.1011.

(c) failing to provide timely revaluations for special education, as required by 20 U.S.C. § 1414(a)(2) and 34 C.F.R. § 300.303(b).

(d) failing to provide a free appropriate public education to students impacted by delayed evaluation, 20 U.S.C. § 1412(a)(1)(A), 20 U.S.C.A. § 1401(9), 20 U.S.C.A. § 1400(c)(5)(A) and (D), 34 C.F.R. § 300.17, 34 C.F.R. § 300.101, and 34 C.F.R. § 300.320-324;

(e) failing to provide children including J.R. ages three to five the right to be provided a FAPE through the public school system. 34 C.F.R. § 300.800.

**SECOND CAUSE OF ACTION: SECTION 504
OF THE REHABILITATION ACT OF 1973**

Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 54 and allege that Austin ISD's failure to provide adequate staffing and practices was in bad faith, a gross violation of professional judgment, deliberately indifferent, and the result of intentional discrimination in violation of Section 504 of the Rehabilitation Act.

## VIII.  ATTORNEY'S FEES

Plaintiffs are entitled to and seeks an award of attorney's fees and costs pursuant to the IDEA, 20 U.S.C. § 1415(i)(3)(B), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(b).

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants on all of their respective causes of action, and that this Court provide the following relief:

1. Issue preliminary and permanent injunctions pursuant to the IDEA and Section 504 to enjoin Defendant from promulgating and implementing policies, procedures, and practices in violation of the IDEA and Section 504.

2. Enter a declaratory judgment declaring that Defendant's policies, procedures and practices relating to the evaluation of students with disabilities violates the rights of all Plaintiffs under the IDEA and Section 504.

3. Pursuant to the IDEA, 20 U.S.C. § 1415(i)(2)(C) and Section 504, 29 U.S.C. § 794a(a)(2), order Defendant to:

   a. Provide expedited special education evaluations for all children with currently delayed assessments utilizing existing staff, contractors, and evaluators that conduct independent educational evaluations (IEEs);

   b. Convene ARD committees for every student impacted by delayed assessment for the past year to determine their need for compensatory educational services;

   c. Direct ARD committees to determine that outside psychological assessments finding students eligible for special education services must be accepted for purposes of beginning services until such time that district is able to conduct their own assessment;

   d. Recruit and hire one school psychologist for every 700 enrolled students and continue school psychologist contracts through the summer as needed to work on overdue evaluations;

4. Order such other and further relief as the Court may deem just, equitable, and proper, and

     5.     Awarding Plaintiffs' attorney's fees and costs.

Dated: March 29, 2021

                  Respectfully submitted,

                  */s/ David M. Peterson*
                  **David M. Peterson**
                  Attorney-in-charge
                  Texas Bar No. 24056123
                  Email: dpeterson@susmangodfrey.com
                  **Neal S. Manne**
                  Texas Bar No. 12937980
                  Email: nmanne@susmangodfrey.com
                  **SUSMAN GODFREY L.L.P.**
                  1000 Louisiana Street, Suite 5100
                  Houston, Texas 77002
                  (713) 653-7873 (phone)
                  (713) 654-6666 (fax)

                  **Dustin Rynders**
                  (application for admission to the Western
                  District of Texas pending)
                  Texas Bar No. 24048005
                  Email: drynders@drtx.org
                  **DISABILITY RIGHTS TEXAS**
                  1500 McGowen, Suite 100
                  Houston, Texas 77004
                  (713) 974-7691 (phone)
                  (713) 974-7695 (fax)

                  **L. Kym Davis Rogers**
                  Texas Bar No. 00796442
                  Email: krogers@drtx.org
                  **DISABILITY RIGHTS TEXAS**
                  1420 W. Mockingbird Lane, Suite 450
                  Dallas, Texas 75247
                  (214) 845-4045 (phone)
                  (214) 630-3472 (fax)

                  *Counsel for Plaintiffs*