IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| J.R., a minor, by his parents and next friends ANALISA and JOE R.; | § § § § | |
| D.J., a minor, by his parents and next friends LAURIE and DAMON J.; | § § § § | |
| A.T., a minor, by her parents and next friends ANDREA and CLINT T.; | § § § § | |
| G.S., a minor, by her parents and next friends JARIN and SEAN S.; | § § § § | |
| A.S., a minor, by his parent and next friend MARIA N.; and | § § § | |
| Disability Rights Texas, | § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION NO.: 1:21-cv-00279 |
| AUSTIN INDEPENDENT SCHOOL DISTRICT, | § § § | |
| *Defendant.* | § § | |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs move for a preliminary injunction to enjoin Defendant Austin Independent School District from promulgating and implementing policies, procedures, and practices in violation of the Individuals with Disabilities Education Act, 20 U.S.C.A. § 1400 *et seq*. ("the IDEA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504"). Specifically, Austin ISD

should be enjoined from continuing to violate the legally mandated timelines for the evaluation of students with suspected disabilities for special education services.

In order to meet these deadlines, an injunction should be issued requiring Austin ISD to comply with the IDEA and Section 504 by (1) providing expedited special education evaluations for all children with currently delayed assessments utilizing existing staff, all qualified contractors, and all qualified evaluators that conduct independent educational evaluations (IEEs) at the expense of Austin ISD; (2) directing Austin ISD's Admission, Review, and Dismissal Committees ("ARD Committees") to determine that outside psychological assessments finding students eligible for special education services must be accepted for purposes of beginning services until such time that Austin ISD is able to conduct its own assessment; (3) continuing the contracts of school psychologists employed or contracted by Austin ISD through the summer as needed to work on overdue evaluations; and (4) holding expedited ARD Committee meetings to review initial evaluations and make eligibility determinations.

## I.      Legal Standard

To receive injunctive relief, Plaintiffs must show (a) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable harm that will result if the injunction is not granted; (3) the threatened injury outweighs any threatened harm to the defendant; and (4) the granting of the requested injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## II.      Plaintiffs Meet the Standards for a Preliminary Injunction

Plaintiffs—which include five children, by and through their parents and next friends, and Disability Rights Texas, the federal protection and advocacy system for Texas on behalf of disabled Texas—meet the grounds required for injunctive relief against Austin ISD.

### A.  There is a Substantial Likelihood that Plaintiffs will Succeed on the Merits

Plaintiffs are likely to succeed on the merits of their claims at trial. Evaluations are the foundation of providing students with disabilities the free appropriate public education (FAPE) to which they are entitled under the Individuals with Disabilities Education Act (IDEA). 20 U.S.C.A. § 1400 *et seq*. Evaluations are used to identify children with disabilities, determine their eligibility for special education, and provide key information to the team that develops the educational plan, including determining services, for each student receiving special education.

Federal law requires Austin ISD to perform an initial evaluation within 60 days of receiving parental consent for the evaluation. 20 U.S.C. § 1414 (a)(1)(C)(I); 34 C.F.R. § 300.301(1)(i).[1] After the evaluation is completed, an ARD committee must meet within 30 calendar days to review the evaluation and determine eligibility for special education. 19 TEX. ADMIN. CODE § 89.1011(d).[2] On information and belief, there are currently at least 800 children zoned to Austin ISD for which Austin ISD has failed to perform initial evaluations within this timeframe, including plaintiffs J.R., D.J., A.T., and G.S:

- D.J. is a six-year-old boy with a sensory processing disorder and suspected ADHD. D.J.'s parents signed an evaluation consent form on January 15, 2021. The evaluations should have been completed by March 30, 2021. *See* Exhibit 1 (Declaration of Laurie F.).

- A.T. is a five-year-old girl with suspected anxiety, obsessive-compulsive disorder, oppositional defiant disorder, and selective mutism. A.T.'s parents signed an evaluation consent form on April 23, 2020. The evaluations should have been completed by October 7,

---

[1] Texas state law requires that a district respond to a parent's written request for an initial special education evaluation within 15 school days, by providing (1) consent for evaluation, or (2) a prior written notice explaining why district is not agreeing to evaluate. 19 TEX. ADMIN. CODE § 89.1011(b). Once consent is provided, the initial special education evaluations is to be completed within 45 school days. 19 TEX. ADMIN. CODE § 89.1011(c). If consent is provided with 35 school days remaining in the school year, the initial evaluation must be completed by June 30. 19 TEX. ADMIN. CODE § 89.1011(e).

[2] If the 30th day falls in the summer, the ARD committee has until the first day of the next school year to finalize an eligibility determination and education plan unless the evaluation indicates the student needs extended school year services. 19 TEX. ADMIN. CODE § 89.1011(d). If the evaluation is completed in the summer pursuant to § 89.1011(e), the ARD committee must meet no later than the 15th school day of the following year.

2021.  *See* Exhibit 2 (Declaration of Andrea T.).

- J.R. is a four-year-old boy with autism and expressive language disorder. J.R.'s parents signed an evaluation consent form on November 10, 2020. The evaluations should have been completed by February 4, 2021.  *See* Exhibit 3 (Declaration of Analisa R.).

- G.S. is a six-year-old girl with suspected speech disorder and dyslexia. G.S.'s parents signed an evaluation consent form on November 11, 2020. The evaluations should have been completed by February 5, 2021.  *See* Exhibit 4 (Declaration of Jarin S.).[3]

Failure to perform an initial evaluation means that these children are not receiving special education services to which they are legally entitled as part of their FAPE under the IDEA.  This can have a wide range of adverse consequences: Austin ISD students with disabilities are not receiving special education services—such as plaintiffs D.J. and A.T.; students with disabilities attending private schools are not receiving services through Austin ISD—such as plaintiff G.S.; and children who are only entitled to attend school if they are special education-eligible are not receiving any services from Austin ISD—such as plaintiff J.R.  At no fault of their own, all of these children have suffered, and continue to suffer, from the lack of services.

Austin ISD created this problem and is failing to fix it.  Amy Leigh Shatila, a former Austin ISD lead evaluation supervisor, states that significant delays in the evaluation system began in the spring of 2019 when a new special education director was hired. Exhibit 6 (Shatila Declaration) at ¶¶4, 10-11.[4] Prior to 2019, evaluators were given the opportunity to work over the summer to keep up with evaluation requests and begin each school year with no backlog. *Id.* at ¶ 11. This changed in the summer of 2019; Austin ISD did not provide summer contracts, and Ms. Shatila began the fall of 2019 with numerous evaluations that were overdue and others that required immediate attention. *Id.*  Ms. Shatila was given many additional responsibilities, including supervising other

---

[3] A licensed specialist in school psychology employed by Austin ISD until April 15, 2021, was repeatedly told that there were 950 past due evaluations. *See* Exhibit 5 at ¶¶ 18-21 (Declaration of Jennifer Covington).
[4] Ms. Shatila worked in special education in Austin ISD for 11 years, including three years as a licensed specialist in school psychology.  *Id.* at ¶1.

evaluation personnel, and her workload became unsustainable. *Id.* at ¶¶ 12-13.  As a supervisor, she also witnessed administrators requesting evaluation personnel to change the dates on paperwork so that it appeared as if an evaluation had been completed by the due date. *Id.* at ¶ 17.  Ms. Shatila and other lead school psychologists filed a grievance with Austin ISD, hoping to work with the district to address the systemic issues, but no meaningful changes were made. *Id.* at ¶¶ 18-20. Ms. Shatila not only fell behind on her evaluations, she was also unable to provide other services to her students, like counseling. *Id.* at ¶ 22.  Ms. Shatila resigned in December 2019, telling Austin ISD's Human Resources that she resigned because of "serious concerns" about her licensure and her inability to fulfill her responsibilities in an "ethical manner." *Id.* at ¶ 23. Ms. Shatila intended to spend her entire career in Austin ISD serving children with disabilities, and she would return to the district if systemic changes were made so that evaluators could ethically perform their roles. *Id.* at ¶¶ 2, 29.

Dr. Jessica O'Bleness, Director of Clinical Training for the University of Texas' graduate School Psychology program, received concerns from her students placed in Austin ISD during the 2019-2020 school year about the workload of their supervisors and lack of support from the district as to best practices. Exh. 7 (O'Bleness Declaration) at ¶ 5. [5]  Additionally, Dr. O'Bleness noted that LSSPs were leaving their employment with Austin ISD. *Id.* at ¶ 6. Dr. O'Bleness made the decision to no longer place graduate students in Austin ISD for the 2020-21 school year. *Id.* at ¶ 5.

Despite attention from both the media and TEA, Austin ISD is failing to take the necessary steps to address the evaluation crisis.  Within the last month, Catherine Huntley, an evaluation professional who came out of retirement due to the dire need for evaluators in Austin ISD, resigned her role as a contract evaluator because she "could no longer tolerate the unethical and abusive

---

[5] Dr. O'Bleness, Assistant Professor of Practice and Director of Clinical Training MA/SSP at the University of Texas, has a Ph.D. in Psychological and Quantitative Foundations with a specialty in School Psychology. She is a LSSP who previously worked in Austin ISD. *Id*. at ¶¶1-2.

practices in the Austin ISD special education department ….." Exh. 8 (Huntley Declaration) at ¶¶ 1-3. According to Ms. Huntley, Austin ISD put unrealistic demands on the number of evaluations to be completed, refused repeated requests for overtime pay, and asked the evaluator to perform duties that were beyond her role and credentials as a diagnostician. *Id.* at ¶¶5, 6, 8-9. Ms. Huntley worked full time for Austin ISD from August 2020 through March 2021, and attended many ARDs for students impacted by delayed evaluations. *Id.* at ¶ 3. She does not recall a single time where Austin ISD raised compensatory education. *Id.* at ¶ 11.

Austin ISD is required to comply with the timelines set by federal and state law with respect to the named Plaintiff children and hundreds of other students whom Disability Rights Texas represents and for whom it advocates.  There are no meaningful defenses or excuses for failure to comply with the statutory timelines.[6]

### B.  Plaintiffs will Suffer an Irreparable Injury

The Plaintiffs will likely suffer an irreparable injury without relief.  The children who have not received a timely initial evaluation are not receiving special education services, and some are not receiving any educational services at all.  This injury is current and continuing—every day that these children do not receive the services to which they are legally entitled constitutes an actual injury.  These injuries will be on-going until the Court rules on the merits of this case. *See D.L. v. District of Columbia*, 194 F.Supp. 3d 30, 97 (D.D.C. 2916) (finding that the District of Columbia's failure to identify and provide special education services to preschool-aged children resulted in "irreparable injury" and "substantial harm by being denied educational opportunities that are

---

[6] *See, e.g.*, https://tea.texas.gov/sites/default/files/covid/covid-19_evaluation_guidance_april_2.pdf (TEA's Evaluation Considerations during COVID-19, stating that "[a]s of the publication of this document, there has been no waiver of federal timelines related to special education compliance. Therefore, evaluation timelines will continue to apply for compliance reporting purposes" and providing school districts with guidance on performing portions of evaluations remotely during COVID-19).

essential to their development").

As explained by Dr. Janette Hahn, a student is not receiving FAPE if a district has failed to do a timely evaluation and is not providing special education services to students with disabilities. *See* Exh. 9 (Hahn Declaration) at ¶ 3.[7] The failure to provide services impacts multiple areas of development, including academic and behavioral, and can lead to secondary issues to include anxiety, depression, embarrassment, and a dislike of school. *Id.* at ¶ 3. Moreover, the lack of services can have a range of impacts on children depending on the disability of the child. *Id.* at ¶¶ 6, 8, 12. For a student with autism, like J.R., providing services that address language and behavior issues at an early age is critical.  Failure to address communications skills early can lead to more significant behavioral issues such as aggression and self-injury. *Id.* at ¶ 6, 10. Research shows that behaviors can often be significantly reduced and even eliminated with early intervention. *Id.*  For students with disabilities that affect their behavior, like A.T., evaluations are critical to developing a plan to address behavior.  Without a plan, behaviors will increase and may manifest into more significant behavioral issues, which may also affect their ability to learn. *Id.* at ¶¶ 11-12.  As noted by Dr. O'Bleness, students with behavioral difficulties face an increased risk of disciplinary action, and the harmful consequences of disciplinary removal cannot be reversed. Exh. 6 at ¶ 15.

The Plaintiffs' injuries cannot be prevented or fully rectified by a final judgment following trial.  These injuries are not accurately measurable and cannot be compensated in damages, and the Plaintiffs do not request damages for their injuries.  As is typical in the IDEA context, Plaintiffs request compensatory special education services for the time that they should have been receiving appropriate services.  But the compensatory special education services are not an adequate substitute

---

[7] Dr. Hahn has over 30 years of experience as an educator, to include service as a classroom special education teacher, diagnostician, and administrator. *Id.* at ¶1.  She has a B.S. in Education/Special Education, a Master of Education/Special Education, and a Doctorate in Education Leadership.  Exhibit A to Hahn Dec.

for children receiving services at the time that they should have been provided. According to Dr. Hahn, "there is not enough time in the day to catch students up if not identified early." Exh. 8 at ¶ 4. Teachers will continue to move forward with academic lessons and "struggling students who have been identified late continue to lose ground with regards to curriculum and learning." *Id. See also* Exh. 6 at ¶ 8 ("In my expert opinion, immediate action is necessary to address the evaluation delays in Austin ISD to stop the harm impacting the students that cannot be fully addressed through compensatory education. Furthermore, not taking prompt action will lead to irreparable and irreversible harm for students because they are not receiving supports they deserve and need.").

Dr. O'Bleness states that students with delayed evaluations and services "are missing out on opportunities to learn, experiencing a lack of school and peer connection, and likely deteriorating from the stress and lack of supports due to neglect of the school system." Dr. Hahn avers that without evaluations, "the children will continue to get further behind, thus widening the gap. The further behind a child gets, the stronger the chances secondary issues will arise and create more problems for the child, the family and the school district. A missed year of direct instruction to address a child's specific needs cannot be made up. The gap will continue to increase." Exh. 8 at ¶ 13.

Plaintiffs' requested injunction would work towards preventing these continuing injuries as quickly as possible. First, requiring Austin ISD to utilize, on an expedited basis, not only its very limited staff of licensed employees but also all qualified contractors and evaluators would expand the number of individuals that can perform the evaluations on Austin ISD's behalf. Austin ISD currently has a drastic shortage of employees available to perform evaluations, which is part of what has led to the current backlog. Second, some children have already received outside psychological assessments that have concluded that the children are eligible for special education services. On information and belief, Austin ISD's current policy is to only accept the evaluations performed on

behalf of Austin ISD.  As a preliminary measure, Austin ISD should be required to recognize these outside assessments and provide services under them until Austin ISD completes its own evaluations.  Third, the contracts of school psychologists who are employed or contracted to perform the special education evaluations for Austin ISD typically go through the school year and are not guaranteed over the summer during school breaks.  Austin ISD should be required to continue all of those contracts over the summer to work through the backlog of evaluations as quickly as possible.  Fourth, requiring the expedited meeting of ARD Committees to review the evaluations and determine eligibility will enable students to receive the services to which they are entitled.  Both Dr. Hahn and Dr. O'Bleness state that the requested relief will reduce the likelihood of additional harm to the plaintiffs and many students with disabilities in Austin ISD with delayed evaluations. Exh. 6 at ¶ 19; Exh. 8 at ¶ 15.  Enjoining Austin ISD from its continued violations through the above steps will help ensure that the children are evaluated and can begin to receive special education services as quickly as possible.

### C.  There is No Adequate Remedy at Law

There is no adequate remedy at law that would satisfy Plaintiffs' injuries.  While Plaintiffs can attempt to prevent Austin ISD from violating the IDEA and Section 504 in the future through final judgment at a merits trial, the law does not provide a remedy that is adequate for the children whose initial evaluations have gone past the legally required timeline.  As described above, compensatory special educations services are not an adequate substitute for receiving those services at the time that they should have been provided, an on-going injury.  As Dr. O'Bleness stated, the harmful consequences caused by the neglect of Austin ISD "cannot be resolved unless immediate action is taken by alleviating the trauma and adding appropriate supports and services." Exh. 6 at ¶ 16.

### D.  Plaintiffs' Injuries Outweigh any Injury to Defendant Austin ISD

As described above, the Plaintiffs have been, and continue to be, injured by Austin ISD's failure to perform initial evaluations within the legally required timelines. The requested injunction would provide virtually no meaningful injury to Austin ISD, since it is required to comply with the IDEA and Section 504 under federal law.

### E.  Public Policy and Public Interest Weigh Heavily in Favor of Injunctive Relief

The Plaintiffs' requested injunctive relief would not adversely affect public policy or public interest. Instead, the opposite is true: the requested injunctive relief is consistent with the public policy of providing special education services as part of the free and appropriate public education that the United States guarantees to all children, and it is in the public interest to ensure Austin ISD's compliance with the IDEA and Section 504.

### III.      Plaintiffs are Willing to Post a Bond

As required by federal law, Plaintiffs are willing to post a bond in support of their requested injunction. However, Plaintiffs request that the Court not require a bond or require only a nominal bond. Plaintiffs are engaged in public interest litigation, seeking Austin ISD's compliance with federal statutes to provide special education services to children. As discussed above, Plaintiffs will likely succeed based on the strength of their case. Austin ISD does not risk any harm in complying with the injunction, since it is required under federal law to follow the IDEA and Section 504. The individual plaintiffs are minors represented by and through their next friends and parents, and Disability Rights Texas is an independent, private, non-profit agency, created by federal law and designated by the Governor of Texas as the federal protection and advocacy system for Texas.

### IV.      Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that a preliminary judgment be entered against Defendant Austin ISD:

1.      Enjoining Austin ISD from promulgating and implementing policies, procedures, and practices in violation of the IDEA and Section 504, including:

   a.   Requiring Austin ISD to provide expedited special education evaluations for all children with currently delayed initial evaluations utilizing existing staff, all qualified contractors, and all qualified evaluators that conduct independent educational evaluations (IEEs) at the expense of Austin ISD;

   b.   Requiring Austin ISD to direct its Admission, Review, and Dismissal Committees ("ARD Committees") to determine that outside psychological assessments finding students eligible for special education services must be accepted for purposes of beginning services until such time that Austin ISD is able to conduct its own assessment;

   c.   Requiring Austin ISD to continue the contracts of school psychologists employed or contracted by Austin ISD through the summer as needed to work on overdue evaluations; and.

   d.   Requiring Austin ISD to hold expedited ARD Committee Meetings within 15 calendar days of completion of initial evaluations to determine eligibility and develop IEPs.

Plaintiffs also request such other and further relief as the Court may deem just, equitable, and proper.

Respectfully  submitted,

*/s/ David M. Peterson*
**David M. Peterson**
Attorney-in-charge
Texas Bar No. 24056123
Email: dpeterson@susmangodfrey.com
**Neal S. Manne**
Texas Bar No. 12937980
Email: nmanne@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
(713) 653-7873 (phone)
(713) 654-6666 (fax)

**Dustin Rynders**
Admitted *pro hac vice*
Texas Bar No. 24048005
Email: drynders@drtx.org
**DISABILITY RIGHTS TEXAS**

1500 McGowen, Suite 100
Houston, Texas 77004
(713) 974-7691 (phone)
(713) 974-7695 (fax)

**L. Kym Davis Rogers**
Texas Bar No. 00796442
Email: krogers@drtx.org
**DISABILITY RIGHTS TEXAS**
1420 W. Mockingbird Lane, Suite 450
Dallas, Texas 75247
(214) 845-4045 (phone)
(214) 630-3472 (fax)

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

On April 23, 2021, counsel for plaintiffs conferred with counsel for defendants regarding the foregoing Plaintiffs' Motion for Preliminary Injunction.  Counsel for defendants indicated that they are opposed to this motion.

*/s/ David M. Peterson*
**David M. Peterson**

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2021, I caused the foregoing Plaintiffs' Motion for Preliminary Injunction to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Western District of Texas, on all parties registered for CM/ECF in the above-captioned matter.

*/s/ David M. Peterson*
**David M. Peterson**